# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-05-369 |
| | § | |
| ALFRED HORACE | § | |

## MEMORANDUM AND ORDER DENYING MOTION FOR NEW TRIAL

The Court has pending before it Defendant Alfred Horace's Motion for New Trial ("Motion") [Doc. # 81], to which the Government has responded [Doc. # 82]. The Court has considered the parties' arguments, the trial record, and applicable legal authorities. The Court concludes that Defendant's motion should be denied.

Defendant is charged in this case with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant was found guilty of this charge after a jury trial conducted on January 4 and 5, 2006. Defendant argues that he is entitled to a new trial pursuant to Federal Rule of Criminal Procedure 33 on the grounds that the Court should not have instructed the jury on "constructive" or "joint" possession, and because the prosecutor made improper and prejudicial arguments to the jury during his closing arguments. The Court will summarize the evidence introduced at trial as necessary to a discussion of the parties' arguments.

I.  **LEGAL STANDARD FOR MOTIONS FOR NEW TRIAL**

A district court may grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33(a). A motion for a new trial "is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial . . . should be invoked only in exceptional cases . . . ." *See United States v. Sipe*, 388 F.3d 471, 493 (5th Cir. 2004) (citation omitted). If the court "finds that a miscarriage of justice may have occurred at trial, . . . this is classified as such an 'exceptional case' as to warrant granting a new trial in the interests of justice." *Id*.

The trial judge is to grant a new trial under Federal Rule of Criminal Procedure Rule 33 only if there is error that is not harmless. *See United States v. Munoz*, 150 F.3d 401, 413 (5th Cir. 1998). The trial judge may weigh the evidence and assess credibility of the witnesses in reviewing a motion for a new trial, *see United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997), but must refrain from reweighing the evidence and setting aside the verdict simply because she feels some other result would be more reasonable. *See Munoz*, 150 F.3d at 413 (citing *Robertson*, 110 F.3d at 1118). Also, the trial judge may grant a new trial only if she finds that the evidence preponderates heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. *See id*.; *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004) (The "court should not grant a motion for new trial unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict."), *cert. denied*, __ U.S. __, 125 S. Ct. 1874 (2005).

When the basis for seeking a new trial is prosecutorial misconduct, rather than other issues, the court must determine whether the prosecutor's actions during trial affected a defendant's substantial rights. The trial court should consider (1) the magnitude of the prejudicial effect of the prosecutor's actions; (2) the efficacy of any cautionary instructions; and (3) the strength of the evidence of the defendant's guilt. *Wall*, 389 F.3d at 474.

## II.   ANALYSIS

### A.   Errors in the Jury Charge

Defendant first challenges the Court's post-evidence jury charge. Defendant contends that the Court should not have instructed the jury on constructive or joint possession and, correspondingly, the Government should not have been permitted to argue those theories, because they were unsupported by the evidence. Defendant relies primarily on the case of *United States v. Mergerson*, 4 F.3d 337 (5th Cir. 1993).

At trial, the Government asserted first and foremost that Defendant actually possessed the gun in issue, a Browning Arms Company, Model 10/71, .380 caliber pistol (the "gun"). The Government responds to Defendant's Motion that the jury charge delivered by the Court, which was taken verbatim from the Fifth Circuit Pattern, was entirely appropriate because there was a sufficient factual basis for the Government to argue to the jury that Defendant actually or, alternatively, constructively possessed the gun in issue, alone or jointly with Defendant's companion, referred to in the evidence as "Red."

The Court holds, on the basis of the evidence presented at trial, that the Government was entitled to argue both constructive and joint possession theories. The Government

adduced testimony from two Houston Police Department officers that they entered a multi-building apartment complex in response to a call concerning a "gang disturbance." They testified that they saw Defendant standing next to a parked maroon Thunderbird talking to two females and another male, who later was identified as Red. The officers testified that when these individuals noticed the officers' presence, they scattered; that Defendant ran away with Red; and that the officers doubled back around one of the apartment buildings looking for the men, but could not find them. When the officers returned to the side of the building where they originally saw Defendant, they again spotted him standing with Red near the Thunderbird. Defendant stood next to the driver's side door. Officer Waleed Hassan testified that he saw Defendant holding a black pistol in one hand at that time. The other officer, Guadencio Saucedo, testified he saw Defendant standing next to the car with something in his hand that looked like a gun. The officers each observed Defendant reach into the driver's side window of the car with both hands and torso, and then pulled himself back out empty handed. Each officer testified that he saw Defendant then walk away from the car. A few minutes later one of the officers saw Defendant walking around the back of one of the nearby buildings. The officers then arrested Defendant.

     Defendant argues that the Court should have denied the Government's requests for jury instructions on constructive and joint possession because there was no evidence to support those theories. This argument assumes that the Court should ignore the

Government's evidence. No cases cited by Defendant support this procedure.[1] In contrast, in the case at bar, the Government presented ample evidence of actual possession and the issue is whether the evidence also supports a constructive or joint possession theory. The Government's evidence presented a fact issue. Defendant was entitled to argue – and did argue – to the jury that it should reject the Government's contentions concerning constructive and joint possession because the evidence did not support those theories.

Further, and significantly, the Government hinged all its arguments to the jury on the proposition that they should believe the officers' testimony. The Government argued that if the jury did not credit the officers then they should find Defendant not guilty.

In any event, there is no requirement that the Court ignore properly received evidence when deciding whether to instruct the jury on certain theories. The Government was entitled to argue circumstantially from its witnesses' testimony that Defendant constructively possessed the gun because there was a reasonable inference that he intended or hoped to return to the Thunderbird to retrieve the gun after the police left the area. Specifically, the

---

[1] Defendant relies heavily on *United States v. Amerson*, 938 F.2d 116, 119 (8th Cir. 1991). That case is distinguishable on its facts, and in any event is not binding authority in this circuit. Defendant also relies on *United States v. Mergerson*, 4 F.3d 337, 348-50 (5th Cir. 1993). That decision and its progeny are "joint occupancy cases," in which the "court has adopted a 'commonsense, fact-specific approach' to determining whether constructive possession was established." *Id.* at 349. In those cases there must be "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." *Id.* (citations omitted); *see, e.g., United States v. Heckard*, 238 F.3d 1222, 1228-29 (5th Cir. 2001); *United States v. Mills*, 29 F.3d 545, 549-50 (5th Cir. 1994); *United States v. Ybarra*, 70 F.3d 362, 365 (5th Cir. 1995). These cases are inapposite to the circumstances at bar where the Government has presented evidence that Defendant at one point actually possessed the weapon he is accused of also constructively or jointly possessing.

Government was entitled to argue that, after Defendant placed the gun in the vehicle, Defendant simply walked away from the area. There was no evidence Defendant ran away from the officers after he returned to the car the first time. Unlike suspects who flee and those who throw contraband away where they believe the police cannot find it, Defendant carefully placed the gun in the Thunderbird and walked away from the vehicle.[2] The car in which the weapon was placed, according to the officers, was stationary and accessible to Defendant until he was arrested. The Government thus was entitled to argue – based on circumstantial evidence – that Defendant intended to return to the car when the officers left the scene. There was, therefore, sufficient evidence for the Government to argue Defendant constructively possessed the weapon after placing it in Red's car.

Defendant also complains that there was insufficient evidence for the Court to have instructed the jury – or allowed the Government to argue – a "joint possession" theory. The Court disagrees. The jury heard testimony from Sherman that she saw Red get out of the driver's seat of the Thunderbird right after the car turned into a parking space near her apartment. She also testified that she heard Red yell "Go tell ["girl's name" the witness could not recall] to get my gun off the seat." Only one gun was found in the car. Thus, Sherman's testimony combined with the officers' evidence circumstantially supports an

---

[2] Defendant's conduct is in stark contrast to Red, who ran away from the scene.

argument that Defendant and Red jointly possessed the gun found in the car by the officers. A joint possession instruction was not error.[3]

The Court concludes that there was no manifest injustice in instructing the jury on constructive and joint possession, in addition to actual possession, and in permitting the Government to argue these theories from the evidence.

### B. Prosecutorial Misconduct

Defendant contends that the prosecutor engaged in improper and highly prejudicial closing argument because (i) he made improper appeals to the jury to "enforce the law" and "do their duty," in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution, and (ii) by unfairly attacking Defendant's character and suggesting that Defendant had threatened Sherman in order to secure her testimony favorable to the defense. The Government opposes these arguments on various grounds. Defendant's contentions are addressed below.

*"Enforce the law" and "Do Your Duty" Arguments*.– The Government made the following argument to the jury:

> Now in situations like these in cases like this **where you're brought the facts that we have in this case, facts that clearly show the defendant is guilty of what he did, when that situation occurs, you people are the only folks in this courtroom who can actually enforce the law.** The police officers, all they can do is arrest people. They can investigate people. We can prosecute people, but **in the end when you're given facts that show somebody's guilty, you're the only folks who can ultimately enforce the law**.

---

[3]   Even if this instruction were error, the error was harmless because the joint possession argument was not emphasized in any way.

Trial Transcript, at 120 (emphasis added).

The Court concludes that the prosecution's comments in closing argument for the jury to enforce the law and to do their duty, while inartful and not appreciated by the Court, were not unlawful in this circuit. *See and compare United States v. Carter*, 953 F.2d 1449, 1461 (5th Cir. 1992); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 283 (5th Cir. 1985); *United States v. Caballero*, 712 F.2d 126, 131 (5th Cir. 1983). The comments were tied sufficiently to the jury's duty to consider the evidence and to find Defendant guilty if there was no reasonable doubt.

Even *if* the comments were deemed improper, taken in context, the prosecutor's conduct did not create manifest injustice. The prosecutor asked the jury to enforce the law based on the facts he believed had been proven at trial. The prosecutor's stated premise was that the jury should find the facts in the Government's favor, and thus his request that the jury follow the law was not unfair.

Furthermore, the Defendant objected to the Government's comment and the Court gave an extensive curative instruction.[4]

---

[4]   The Court told the jury that its

> job was to serve as judges of the facts. The only thing that is relevant to you is, has the government proved beyond a reasonable doubt in all of your minds that the defendant knowingly possessed the weapon involved. That's the issue.
>
> And you don't have an obligation to be out there as a posse or a law enforcement group. You don't have an obligation to do anything but determine what the government has or has not proven.

The prosecutor then argued:

> I'm not asking you all to go out in some other case and do something, **I'm asking you in this case with the facts that you've been given to find the defendant guilty of this law that he has violated because those are the facts that you have been shown in this case.** He's a convicted felon who possessed a firearm on May 6th, 2005. **That's all I'm asking you to do and that is your duty. If you find beyond a reasonable doubt that he did that, it is your duty to find him guilty and that's all I'm asking.** (emphasis added)

*Id.* at 121-22 (emphasis added). Defendant complains that the Government again violated the law by arguing that the jury should "do its duty." For the same reasons set forth above, the Court rejects this contention. The prosecution's argument was grounded sufficiently in the law, i.e., that if the jury found that the Government had proven the elements of the charge, the jury should find the Defendant guilty. Furthermore, the Government's argument, when viewed in its entirety and in light of the Court's instructions, did not create significant, if any, prejudice to Defendant.

***Attack on Defendant's Character.*** – Defendant next contends that the Government made an unfair attack on his character and suggested without any support in the record that

---

> So you may disregard – you must disregard any appeal about you enforcing the law. Your job is to apply the law that I have given you. You have an oath to do that. The oat requires that you consider the elements that I have explained to you and the evidence that has been presented to you after you weigh the evidence and decide who you believe and what importance to give that evidence.
>
> So, please, I urge you to consider my instructions and apply the law, please.

Trial Transcript, at 120-21.

he had threatened Sherman in order to secure her favorable testimony. The Court finds these arguments unpersuasive.

Initially, Defendant contends that the Government urged the jury to make an unreasonable inference that Sherman testified as she did because she was scared of Defendant and his companion, Red.[5] Applying the three *Wall* factors, the Court addresses what prejudice Defendant suffered from this argument. The Court concludes that Defendant suffered little prejudice.[6] Because Sherman's testimony was in many respects inconsistent

---

[5] Defendant focuses on the Government's comments in closing argument that:

> Maybe she might be a little afraid of those folks [Defendant and Red]? She's got kids. Maybe she might be afraid. Maybe she might want to come in here – she's asked to come and testify. Do you think she's willing to come in here and say, 'He had a gun. They're bad.' And all that? No. She has a motive not to tell the truth. She has a motive in it? No. Whatever you think about that motive, she's got kids. Maybe she's trying to protect them. I don't know, but that's a motive for her not to tell the truth in this situation.
> * * * *
> The rest of it is not believable. She has a motive not to tell the truth.

Trial Transcript, at 111-12. Defendant also points to the following rebuttal argument by the prosecutor:

> But there is, through reasonable inferences, evidence that Ms. Sherman has a reason to lie. We talked about it earlier. The defense would suggest to you that well, if the person she's scared – the only person she should be scared of is Red. Well, who's hanging out with Red? The defendant. Who's not here? Red. Who's here? The defendant, Red's buddy. I mean, who's she going to be scared of in this courtroom? It's going to be Mr. Horace.

Trial Transcript, at 119.

[6] The Court does not condone the prosecutor's argument, which is at the margin of propriety and was entirely unpersuasive.

with the officers' testimony, there were already reasons for the jury to reject Sherman's testimony if they believed the officers. Thus, the first factor does not assist Defendant.

Furthermore, Defendant did not object to the Government's argument. Rather, Defendant confronted it head-on, and did so reasonably well. He pointed out that the focus of the argument had to be on Red. Defendant's own evidence established that Defendant on May 6 was with a fellow who had been seen frequently at the apartment complex, had been seen with a gun, and had created a potential disruption that required police to be called. This factor therefore does not tip in Defendant's favor.

Finally, the Court notes that the evidence against Defendant was substantial. Therefore, even if the prosecutor made improper argument, there is no manifest injustice and there is no basis for a new trial.

Defendant also contends that the quoted argument by the prosecutor amounts to the unfair contention that Defendant personally had "engaged in the federal crime of witness tampering in order to secure Ms. Sherman's favorable testimony." Motion, at 17. This argument is unsupported by the record, and is rejected.

### C. Cumulative Error by Prosecutor

Defendant lastly contends that even if no single error by the prosecutor is sufficient to warrant a new trial, the improper conduct cumulatively justifies the relief requested. The Court is unpersuaded. The prosecutor's conduct was not admirable, but his conduct, even viewed cumulatively does not "cast serious doubt on the correctness of the jury's verdict." *United States v. Holmes*, 406 F.3d, 337, 356 (5th Cir. 2005). Defendant's Motion is denied.

### III.     CONCLUSION AND ORDER

Defendant has not met his burden to show that the jury charge or prosecutor's arguments were error or so prejudicial as to render acceptance of the verdict a manifest injustice. The Motion for New Trial therefore must be denied. It is therefore

**ORDERED** that Defendant's Motion for New Trial [Doc. # 81] is **DENIED**.

SIGNED at Houston, Texas, this **15th** day of **February, 2006.**

_____
Nancy F. Atlas
United States District Judge